```
IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
   DIVISION OF ST. THOMAS AND ST. JOHN
```

JUAN MOTA,                          ) D.C. CV. NO. 2004-071
      Petitioner,              )
                           ) RE: D.C. CR. NO. 2000-722-01
      v.                       )
                           )
UNITED STATES OF AMERICA,            )
      Respondent.              )
_____ )

**Copies to:**
    Magistrate Geoffrey W. Barnard
    Anthony J. Jenkins, Esq., AUSA
    Juan Mota, Reg. No. 06050-094, MDC Guaynabo, P.O. Box 2005,
        Cataño, PR 00963 (Please Mark: LEGAL MAIL: Open In
        Presence of Inmate Only)
    Law Clerk

## MEMORANDUM OPINION

**GOMEZ, C.J.**

Petitioner Juan Mota ("Mota") comes before this Court on a *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

## I.   FACTS AND PROCEDURAL HISTORY

Insofar as this opinion is written solely for the parties, only those facts relevant to this discussion will be recited.  Mota was charged in a two-count indictment which alleged that he conspired[1] to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count One), and that he knowingly and

---

[1]    Mota was charged along with his codefendant, David Hernandez-Rivera a/k/a Jesus Maria Espirito Santo.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 2

intentionally possessed with intent to distribute cocaine (Count

Two).   Mota pled guilty to Count One.[2]   In a Judgment entered on

June 11, 2003 and amended on August 20, 2003, the Honorable Thomas

K. Moore sentenced Mota to a term of 120[3] months incarceration with

credit given for time served in pretrial and post-conviction

detention,[4] and supervised release of five (5) years.   Mota had no

further contact with this Court until February 27, 2004 when he

requested information on his credits for time spent in jail.[5]   No

---

[2]     Although the plea agreement does not exist in written form, the
Court has Mota's signed Application for Permission to Enter a Plea of Guilty
dated March 11, 2002.  Mota was assisted in completing the application by
Sonia Carson, Interpreter, and Attorney Joseph.  On that same date, Mota pled
guilty to Count one before the Honorable Thomas K. Moore.  Count Two of the
Indictment was dismissed.

[3]     Mota faced a maximum penalty of life imprisonment and a sentence
between 292 to 365 months.  In his application for permission to plead guilty,
he agreed to the mandatory minimum sentence of 10 years.  He was ultimately
sentenced to the 10-year minimum (120 months).

[4]     While awaiting sentencing, Mota was allowed to reside in the
District of Puerto Rico under electronic monitoring.  The Court was
subsequently informed in April 2002 that Mota had absconded, and a warrant was
issued for his arrest.  He was rearrested on that warrant in February 2003.
Mota was not charged with breaking the conditions of his release, and the only
charge to which he was sentenced was to the drug offense in Count I of this
Indictment.

[5]     Mota wrote:

Dear Clerk of the Court,
      I am currently inquiring into the amount of actual jail
credits that I am supposed to receive in connection with this
case.  I was told by the Judge that I would get credit for the
time that I have been involved with this case and the orders were
not followed by the B.O.P.  I simply want to clear up any
misunderstanding.  I was also inquiring into the information about
my time spent in Puerto Rico as part of this instant case.  I need
you to forward me a copy of your calculations on the time that is
due to me based upon the law.  I await your answer at the address
above.  Thank [y]ou for your time and care in this important

(continued...)

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 3

mention or inquiry was made about and appeal.  Then, on June 25,

2004, Mota notified the Court of his desire to file a late notice

of appeal because his counsel promised him that he would file a

notice of appeal, but he never did.  (Mot. to File Late Notice of

Appeal filed Jun. 25, 2004, D.C. CR. No. 00-722.)  The Government

opposed Mota's motion as untimely filed.[6]  Judge Moore summarily

denied Mota's motion to file a late notice of appeal, and he

appealed.  The Court of Appeals for the Third Circuit ("Court of

---

[5](...continued)
matter.

(Letter from Mota to Court filed Feb. 27, 2004.)

[6]     The Government opposed Mota's motion on the following procedural
grounds:

   (1) The time limit for filing a timely notice of appeal is
   mandatory and jurisdictional.

   (2) The Federal Rules of Appellate Procedure gives a defendant ten
   (10) days to file a notice of appeal, and the district court may
   extend the time to file a notice of appeal for a period not to
   exceed 30 days from the expiration of the time otherwise
   prescribed by Rule 4(b).  Fed. R. App. P. 4(b)(1)(A) and 4(b)(4).

   (3) District courts retain the authority to grant the appealing
   party a Rule 4(b) extension after the 10-day period has elapsed so
   long as the appealing party filed the notice of appeal within the
   30-day extension period.
   (4) If no notice of appeal has been filed within the thirty day
   extension period, then the district court's order would have no
   force or effect, as the court can only extend the filing period
   for thirty days.

   (5) Defendant's judgment was entered on June 12, 2003, and no
   notice of appeal has been filed.  His motion for leave to file
   late notice of appeal is dated June 21, 2004.  If this Court were
   to grant defendant's motion it would have no force and effect and
   the Court of Appeals would be without jurisdiction to decide
   defendant's appeal.

(Opp'n to Def.'s Mot. for Leave to File Late Notice of Appeal at 1-3.)

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 4

Appeals") dismissed his appeal for lack of jurisdiction on July 6,

2005.   Mota is now before the Court on a *pro se* motion to vacate,

set aside or correct his sentence pursuant to 28 U.S.C. § 2255

which was filed on June 7, 2004.[7]


## II.   DISCUSSION

In this § 2255 motion, Mota alleges ineffective assistance of

counsel; that he is actually innocent; and that his sentence was

illegal and "imposed without a true evaluation of the basis of the

charged offense." (§ 2255 Mot. at 1.)   More specifically, he

alleges that his retained counsel, Michael Joseph, Esq. ("Mr.

Joseph"), failed to file a notice of appeal on his behalf, despite

Mota's request that he do so.

### A. Standards of Review

To prevail in a § 2255 motion alleging constitutional error,

a petitioner must establish an error of constitutional magnitude

which had a "substantial and injurious effect or influence" on the

proceedings.   *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993);

*see also Petersen v. United States*, CV. No. 1998-066, 2003 WL

22836477, at *2 (D.V.I. Nov. 24, 2003).   Even an error that may

justify a reversal on direct appeal will not necessarily sustain a

---

[7]      The Court sent Mota a notice dated August 9, 2004 as required by
*United States v. Miller*, 197 F.3d 644 (3d Cir. 1999).

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 5

collateral attack.  *See United States v. Addonizio,* 442 U.S. 178,

184-85 (1979).

"Where a defendant has procedurally defaulted a claim by

failing to raise it on direct review, the claim may be raised in

habeas only if the defendant can first demonstrate either 'cause'

for the failure to comply with the procedural requirement and that

actual 'prejudice' would result from the alleged constitutional

violation, or that he is 'actually innocent.'"  *Bousley v. United

States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see

also Jenkins v. United States*, 333 F.3d 151, 155 (3d Cir. 2003);

*United States v. Sanders*, 165 F.3d 248, 250 (3d Cir. 1999).  There

is no procedural default for failure to raise an ineffective

assistance claim on direct appeal.  *Massaro v. United States*, 538

U.S. 500, 503-04 (2003).

Claims of ineffective assistance of counsel must satisfy the

two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668

(1984).  First, a petitioner must show that, considering the facts

of the case, his counsel's challenged actions were unreasonable.

*Id.* at 690.  The Court must review a petitioner's claim under the

"strong presumption that the counsel's conduct falls within the

wide range of reasonable professional assistance; that is,

[petitioner] must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 6

trial strategy.'"  *Id.* at 688.   Second, the petitioner must show
that he was prejudiced by counsel's conduct in that there is a
"reasonable probability" that deficient assistance of counsel
affected the outcome of the proceeding at issue.  *Id.* at 694-95.
"The benchmark for judging any claim of ineffectiveness must be
whether counsel's conduct so undermined the proper functioning of
the adversarial process that the trial cannot be relied on as
having produced a just result."  *Id.* at 686, 104 S.Ct. 2052.

In this case, an evidentiary hearing was needed to develop
facts not in the record, namely whether Mota requested that Mr.
Joseph file an appeal.   *See* Rules Governing Section 2255
Proceedings, Rule 8; *United States v. Headley*, 923 F.2d 1079, 1083
(3d Cir. 1991).[8]

**B.  Counsel's assistance was constitutionally ineffective.**

The gravamen of this collateral attack is that Mota's counsel
provided constitutionally ineffective assistance by failing to file
an appeal, despite being requested to do so.  A court adjudicating
a claim of ineffective assistance of counsel must take all relevant
circumstances into account. *See Harrignton v. Gillis*, 456 F.3d 118
(3d Cir. 2006) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 485
(2000)).

---

[8]     Darren John-Baptiste, Esq. was appointed to represent Mota at the
evidentiary hearing before the Honorable Curtis V. Gómez on March 17, 2009.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 7

On the day his trial was set to begin, Mota pled guilty to
Count One of the Indictment.[9]  "A guilty plea is an admission of
all the elements of a formal charge."  *McCarthy v. United States*,
394 U.S. 459, 466 (1969).  However, a defendant's plea of guilty
does not waive his right to argue that his decision to enter the
plea was not knowing or voluntary because it was the result of
ineffective assistance of counsel.  *See United States v. Garth*, 188
F.3d 99 (3d Cir. 1999).

At sentencing, Judge Moore noted that Mota seemed reluctant to
admit his guilt and this colloquy followed:

> THE COURT: I guess from reading the Presentence Report it
> sounds like Mr. Mota wants to withdraw his plea?
>
> MR. JOSEPH: Well, Judge, if he wants to withdraw his
> plea, that's his right.  Except, as I understand it, he
> has to–
>
> THE COURT: I just want to clarify, because his statement
> here indicates that he didn't do anything wrong.
>
> MR. JOSEPH: I understand, Judge.  However, the evidence
> is overwhelming to the contrary.
> He had a codefendant.  I spoke with his codefendant
> . . . and the codefendant admitted that they were in fact

---

[9]    The Court "need not . . . be convinced beyond a reasonable doubt
of a defendant's guilt to accept a plea of guilty; it need only find
sufficient evidence in the record as a whole to justify a conclusion of
guilt."  *United States v. Lessner*, 498 F.3d 185 (3d Cir. 2007) (citing *United
States v. Cefaratti*, 221 F.3d 502, 509-10 (3d Cir. 2000)); *see generally North
Carolina v. Alford*, 400 U.S. 25, 37-38 (1970) (accepting defendant's guilty
plea over protestations of innocence).  "The court may make that inquiry by
looking to the defendant's own admissions, the government's proffer of
evidence, the presentence report, or 'whatever means is appropriate in a
specific case – so long as the factual basis is put on the record.'"
*Cefaratti*, 221 F.3d at 509 (citations omitted).

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 8

> guilty; and . . . that if necessary he would have
> testified against Mr. Mota.
>      So if Mr. Mota wants to withdraw his plea, I do not
> think he's eligible since, in fact, he would have to in
> fact be innocent of these charges.  And I cannot see him
> convincing any court, any judge, even in the interest of
> justice as the standard is for the withdrawal of pleas,
> that he is in fact innocent. . . .

(Sentencing Tr., 4-5, Jun. 11, 2003.)  Mr. Joseph opined that there

were no facts upon which Mota would be able to meaningfully assert

his innocence to withdraw his plea, and it would be the defendant's

burden to establish that there were in fact grounds for withdrawal

of his plea.[10]  The colloquy continued:

> THE COURT: Well, let me hear from – do you have a
> position on this, Mr. Jenkins?
>
> MR. JENKINS: Yes, Your Honor.  I likewise agree with
> Attorney Joseph that the defendant has no legal basis to
> support the withdrawal of a plea.  And I really question
> the knowing and intelligent decision to withdraw his plea
> based on the fact that –
>
> THE COURT: There hasn't been a motion.  I'm just going by
> what he told the probation officer.  And ordinarily, I
> don't like to sentence people who don't you know, on a
> plea of guilty unless they admit they are guilty.
>
> MR. JENKINS: Well, he did admit at the change of plea
> colloquy, Your Honor.  He admitted to the facts stated by
> the government during the change of plea hearing that the
> facts as the government stated were true.
>
>      . . . .

---

[10]      *See United States v. Maynard*, 152 Fed. Appx. 191, 193-94 (3d Cir.
2005) (noting that assertions of innocence alone are insufficient to permit a
defendant to withdraw a guilty plea); *see also Government of the Virgin
Islands v. Berry*, 631 F.2d 214 (3d Cir. 1980).

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 9

THE COURT: All right.  We'll proceed then. . . .

(Sentencing Tr., 5-7, Jun. 11, 2003.)

During the open-court sentencing colloquy, Judge Moore advised

Mota, who was assisted by a Spanish interpreter, of his right to

appeal as follows:

> THE COURT:  So you may have a right – there may be
> aspects of the sentencing that you want to appeal.  If
> you cannot afford counsel, one will be appointed for you.
> Mr. Joseph will continue to represent you, at least
> through the next ten days, because it's only ten days you
> have within which to notice an appeal, to tell this court
> that you want to appeal.  If you don't do it within ten
> days, you lose any right to appeal.
>      If for some reason you want to appeal and you either
> can't reach Mr. Joseph or you do and he's unwilling to do
> it, and you can't, you haven't had a chance to have an
> attorney appointed for you, you can tell the Court you
> want to appeal yourself by calling the Clerk's office,
> telling them who you are, there are people who speak
> Spanish there, and that you've been sentenced, and that
> you want to appeal.  And they will notice, they will take
> note of that and it will proceed from there.
>      The important thing I want you to understand right
> now is that if you do not, either through your attorney
> or yourself, tell the Court you want to appeal within ten
> days of today's date, you lose any right to appeal.
>      So unless there's –
>
> THE DEFENDANT:  If I want to appeal?
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT:  If I want to appeal?
>
> THE COURT: Okay.  If you want to appeal.
>
> THE DEFENDANT:  If it [sic], I would like Mr. Joseph to
> appeal.
>
> THE COURT: You're saying you do want to appeal?

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 10

    THE DEFENDANT: Yes.

    THE COURT: Mr. Joseph, you will file whatever is necessary.

    MR. JOSEPH: I might feel compelled to file a –

    THE COURT: Well, you know what to do, Mr. Joseph.

    MR. JOSEPH: If the Court appoints me –

    THE COURT: Well, whatever you work out with him just make sure that notice is taking [sic] down.  And, Mrs. Donovan, we will make sure a notice is filed to appeal. But work out with him whatever you want.

(Sentencing Tr., 19-21, Jun. 11, 2003.)  Without question, Mota was informed of his right to appeal and the procedure for doing so, but the sentencing court's obligation goes further.  (Sentencing Tr., 19-21, Jun. 11, 2003.)  It has an "obligation . . . to inform the defendant of his right to appeal and an attorney's responsibility, under the Sixth Amendment, to provide effective assistance in the initiation of his client's appeal."  *Hodge v. United States*, 554 F.3d 372, 381 (3d Cir. 2009).

    In reviewing the first prong of *Strickland*, namely whether counsel's representation was objectively reasonable, the Court notes that counsel has "a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfriviolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 11

counsel that he was interested in appealing." *Flores-Ortega*, 528

U.S. at 480.

At the evidentiary hearing held on March 17, 2009, the Court

attempted to develop facts regarding whether Mota requested that

Joseph file an appeal.  First, Mota explained why he did not

contact the Court within 10 days to express that he wished to file

a notice of appeal as follows:

> BY MR. JOHN-BAPTISTE:
> Q. Mr. Mota, within 10 days of your sentencing, could you
> have picked up the phone and called the Clerk's Office?
> A. I could not, because I was incommunicado in St. Croix.
> Q. What do you mean, you were incommunicado?
> A. We could not depend on a phone nor on a stamp to file
> a motion to the Court.
> Q. What do you mean, you could not depend -- did you have
> access to a phone while you were in St. Croix?
> A. Negative.
> Q. Did you request a phone call?
> A. Yes, but they did not grant us a call.
> Q. Okay.  Did you have access to writing materials?
> A. Nothing.
> Q. And how, how long did this condition exist?
> A. For about an average of 18 days, minimum.
> Q. And where were you located at the time?
> A. It was in a prison. I think the name was Golden Grove,
> if I remember correctly. There was a problem there. We
> could not wash or drink for 72 hours.
> Q. Okay. Now . . . after your stay at Golden Grove,
> were you moved?
> A. Yes. They moved us towards Puerto Rico.
> Q. And what happened in Puerto Rico?  What, if
> anything, happened in Puerto Rico?
> . . . .
> A. For security reasons, we were placed in a hole.
> Q. And how long were you placed in the hole?
> A. I don't recall, but it was more like a week or
> something like that.
> Q. Okay.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 12

> And during that time, did you have access -- were you
> able to make a phone call?
> A. No.
> Q. Did you have access to writing materials?
> A. About four, five, or six days later, we were able to
> buy paper and -- what do you call it -- a stamp.
> Q. And at that time, did you know whether or not an
> appeal had been filed on your behalf?
> A. I had thought that that had been done.
> Q. And who did you think did that?
> A. I thought Michael Joseph had placed it on my behalf.
> But my -- but Benjamin Aguirre visited me and told me
> that there has not been one done, so he was going to do
> it on my behalf.

(Tr. Evidentiary Hr'g. at 17-19.)   Then, on direct examination

Mr. Joseph explained why he did not file an appeal on Mota's

behalf in the following colloquy:

> Q.  Regarding the final colloquy at the sentencing
> hearing, regarding the appeal process, was an appeal
> filed on behalf of Mr. Mota by you?
> A. Not my be. And --
> Q. Why not?
> A. -- as I try to tell the Court, there is -- the last
> couple sentences of the colloquy wasn't read by Mr.
> Mota's current counsel.
>      But I tried to tell the Court, even if the Court did
> appointed me to represent, as appellate counsel – which
> I was never appointed by this Court to, as appellate
> counsel -- I would have filed an Anders brief.
>      And that -- those are the missing words, when I
> says, "I would feel compelled..."  What would have come
> after that would have been a brief telling the Court that
> an appeal is frivolous, meritless, and an insult to the
> intelligence of the Court.
>      . . . .
>      And I did tell -- made it clear to him that the
> Court let him know that I had the right to be unwilling
> to do it, as the Court said.  If you want him to, and
> he's unwilling to, call Ms. Donovan, tell this judge,
> tell the marshal you want to appeal.
>      . . . .

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 13

> BY MR. THEODORE:
> Q.  In this instance, Attorney Joseph, did you have any
> further conversations with Mr. Mota following the
> conclusion of the sentencing hearing?
> A.  That's what I'm saying.  I let him know that if, even
> if the Court appointed me, and it didn't, I wouldn't --
> I would file a motion to withdraw, because there was no,
> nothing I could appeal on, and that he would be better
> off asking the Court to appoint another lawyer for him,
> to file such an appeal.
>         Because in my opinion, any appeal, which, which
> allowed him to get a new trial, would have brought in
> Mr. Hernandez, and he would have been for another 15,
> minimum, more years in jail, and he would be, he would
> be blaming that attorney every day for those extra 15
> years, as that attorney should never had appealed,
> and should have known better.

(Tr. Evidentiary Hr'g. at 39-42.)  Then, on cross-examination by

Mr. John-Baptiste, Mr. Joseph further explained his reluctance to

file an appeal as follows:

> [BY MR. JOHN-BAPTISTE:]
> Q.  And you also recall that the Court, in fact, advised
> you, as well as Mr. Mota, at sentencing, "Mr. Joseph will
> continue to represent you at least through the next 10
> days," isn't that correct?
> A. Yes.  But he also said that I would, I was able to
> advise Mr. -- thing -- that I'm unwilling to file that
> notice of appeal. For it would only result in my telling
> the Court that any appeal is meritless, and I want to get
> out of the case.
> Q. Okay.  But you do understand that the Court was
> telling you that you were obligated to represent Mr. Mota
> --
> A.  No, sir.
> Q.  -- during the next 10 days?
> A.  No, sir.
> . . . .
> Q.  Okay.  Now, despite that, it was clear to you that
> Mr. Mota wished to appeal, isn't that correct?
> A.  Yes.  It was also clear to me that he knew how to
> perfect that appeal.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 14

(Tr. Evidentiary Hr'g. at 43-48.)

In its post-hearing memorandum,[11] the Government argues pursuant to 18 U.S.C. § 3742 that filing a notice of appeal would have effectively breached the plea agreement; that Mr. Joseph made a strategic decision not to appeal, was not ineffective in failing to file an *Anders* brief; that this case can be distinguished from *Hodge*; and finally, if this Court were to rule against the Government, at best, Mota should only be allowed to file an appeal as to his sentence.

> Section 3742(c) provides in relevant part that:
>
> In the case of a plea agreement that includes a specific sentence under rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure--
>     (1) a defendant may not file a notice of appeal under paragraph (3) or (4) of subsection (a) unless the sentence imposed is greater than the sentence set forth in such agreement.

18 U.S.C. § 3742(c)(1). At Mota's sentencing, Judge Moore accepted the plea agreement and sentenced him to the ten-year punishment agreed upon by the parties. (Sentencing Tr. at 7, 12, 17.) The Government argues that "the failure of Attorney Joseph to do something against his better judgment, at the request of his client, that results in a breach of a plea agreement and subjecting the defendant to potentially greater punishment" does not amount to

---

[11]    At the close of the evidentiary hearing, both parties were instructed to file follow-up memoranda on their respective arguments.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 15

ineffective assistance of counsel.

As the Government notes, "the weight of the established case precedent is contrary to the positions set forth in [its] brief." (Gov't Mem. Regarding Pl.'s Mot. for Relief at 3.)  First, the plea agreement does not exist in written form, and the application to enter a plea does not contain an explicit waiver clause limiting Mota's right to appeal or collaterally attack his conviction. Second, Judge Moore stated at the sentencing, "you may have a right -- there may be aspects of the sentencing that you want to appeal." (Sentencing Tr. at 19-20.)  Third, if the Court were to accept the Government's § 3742 argument, that would effectively put this Court in the position of presuming which of the four statutory grounds to appeal Mota would be relying upon,[12] and also deciding the merits of that appeal.  In determining whether Mr. Joseph provided ineffective assistance under *Strickland* in failing to file an appeal as requested by his client, the merits of that appeal are not a factor to be considered by this Court.[13]  Here, it is for the court of appeals to determine whether it has jurisdiction over Mota's appeal, and the merits or frivolity of that appeal.  Fourth,

---

[12]     *See* 18 U.S.C. § 3742(a).

[13]     *See, e.g., Gaston v. United States*, 237 Fed. Appx. 495, 496 (11th Cir. 2007) (internal citation omitted) ("[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  This is true even absent the defendant showing that he would have had any viable grounds for an appeal.)

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 16

the Court is unconvinced that under the circumstances presented in this case, Mr. Joseph's decision not to appeal was an acceptable strategic decision.

The Court is mindful that in any given case, counsel must make difficult strategic decisions in the interest of their client.  For that reason, a court must show deference to those strategic decisions fully understanding that with the benefit of hindsight, it is easy to suggest different strategies.  *See Strickland*, 466 U.S. at 689) (noting that the range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight).  Nonetheless, the highly deferential standard applied to counsel's performance under *Strickland* was not intended to be a total barrier to relief.  *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (citation omitted).  Such is the case here where the Court must conclude that, on balance, the law does not support counsel on these facts.

Having considered the testimony and arguments of the parties, the record is clear and uncontroverted that Mota reasonably demonstrated to counsel that he wanted to file an appeal.  "Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).  The

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 17

Court further finds that Mota has satisfied the first prong of *Strickland* by showing that Mr. Joseph's assistance was constitutionally ineffective in failing to file an appeal. *See Hodge*, 554 F.3d at 381 (holding that defendant was "prejudiced by his counsel's failure to initiate the appeal process, regardless of the District Court's sentencing colloquy"). With regard to the second *Strickland* prong, "prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." *Solis v. United States*, 252 F.3d 289 (3d Cir. 2001). Having found that counsel's failure to file a notice of appeal constituted ineffective assistance, the Court need not address the remaining issues raised in Mota's § 2255 motion insofar as Mota will be granted a second chance to seek direct review. The Court will not, as requested by the Government, place limits on the scope of Mota's direct appeal.

## III. CONCLUSION

For the reasons stated, the Court finds that Mr. Joseph failed to provide effective assistance in the initiation of his client's appeal, and that Mota was prejudiced by that failure. The Court will vacate Mota's sentence and re-enter the sentence so that he has the opportunity to file a direct appeal. *See Hodge*, 554 F.3d at 382. An appropriate order follows.

*Mota v. USA*
D.C. CV. NO. 2004-071
Mem. Opinion
Page 18

**E N T E R:**


**/s/**

_____
**CURTIS V. GÓMEZ**
**CHIEF JUDGE**